PER CURIAM.
N.J.J. filed a complaint in the Madison Circuit Court, seeking worker’s compensation benefits from Wesfam Restaurants, Inc., d/b/a Burger King (“Burger King”). *456 After a nonjury trial, the trial court found that N.J.J. had not sustained a compensa-ble injury under § 25-5-1(9), Ala.Code 1975, because, it reasoned, her injuries were caused by the acts of third parties who intended to injure her for reasons personal to her and not directed against her as an employee or because of her employment. Specifically, the trial court found that the attack as a result of which N.J.J. was injured was racially motivated. N.J.J. appealed. The Court of Civil Appeals affirmed the trial court’s judgment, without an opinion. N.J.J. v. Wesfam Rests., Inc. (No. 2060444, October 12, 2007), — So.3d - (Ala.Civ.App.2007) (table). This Court granted certiorari review and held oral argument. However, after reviewing the record and the briefs of the parties, we now quash the writ.
N.J.J. worked for Burger King for 19 years. She was a restaurant manager for 10 of those 19 years. During the early morning of August 11, 2002, N.J.J. was assaulted while attempting to unlock the Burger King restaurant on Memorial Parkway in Huntsville. N.J.J. was grabbed by two white males who pulled her behind the Burger King building. The two men physically and sexually assaulted N.J.J. A third man acted as a lookout during the assault. After she was discovered, N.J.J. was transported by ambulance to Huntsville Hospital, where she was treated for multiple injuries sustained during the attack, including abrasions and lacerations to her body, face, and genitals.
N.J.J. testified that, during the attack, the attackers repeatedly stated: “We’ll show you what we do to nigger lovers.” N.J.J., who is white, testified that shortly before the attack she had banned the man who acted as the lookout from the Burger King restaurant for setting a napkin holder on fire. N.J.J. testified that before the attack she had never seen the two men who attacked her. N.J.J. identified D.S. as the man who had acted as the lookout. N.J.J. testified that, during the attack, D.S. did not make any statements regarding his earlier ejection from the Burger King restaurant. No evidence was presented of any statements made during the attack that would indicate that the attack was related to N.J.J.’s employment. N.J.J. testified that D.S. asked the two attackers, who were burning her with a cigarette, not to do so and ultimately asked the two attackers to leave.
Records from the Huntsville Police Department contain the results of a polygraph test administered to D.S. as part of the investigation of the attack. During the polygraph test, D.S. was asked whether he was present when N.J.J. was assaulted and whether he participated in any manner in the assault. He answered in the negative to both questions, and the test did not indicate any deception.[1]
The standard of review on appeal in a worker’s compensation case is well settled:
“ ‘[W]e will not reverse the trial court’s finding of fact if that finding is supported by substantial evidence — if that finding is supported by “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’
“Ex parte Trinity Indus., Inc., 680 So.2d 262, 268-69 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). *457 However, ‘an appellate court’s review of the proof and [its] consideration of other legal issues in a workers’ compensation case shall be without a presumption of correctness.’ Ex parte American Color Graphics, Inc., 838 So.2d 385, 387-88 (Ala.2002) (citing § 25-5-81(e)(1), Ala. Code 1975).”
Ex parte Southern Energy Homes, Inc., 873 So.2d 1116, 1121 (Ala.2003).
The Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975, is intended to make workers’ compensation the exclusive remedy for most job-related injuries. The Act excludes from its provisions an injury caused by the act of a third party who intends to injure the employee because of reasons personal to the employee and not directed against him or her as an employee or because of his or her employment or where the attack had no relationship to the employment. § 25-5-1(9), Ala.Code 1975; see also Jacobs v. Bowden Elec. Co., 601 So.2d 1021 (Ala.Civ.App.1992). In other words, an employee’s injury caused by the willful act of a third person arises out the employment and is compensable under the Workers’ Compensation Act only if the willful act was directed against the employee because of his or her employment, and this requirement is met if there is a causal connection between the conditions under which the work is required to be performed and the resulting injury.
In Dean v. Stockham Pipe & Fittings Co., 220 Ala. 25, 123 So. 225 (1929), this Court analyzed § 36(j) of the Workmen’s Compensation Act in effect at that time. That subdivision was very similar to § 25-5-1(9), Ala. Code 1975. Under § 36®, an injury was not compensable if it was “‘caused by the act of a third person or fellow employee, intended to injure the employee because of reasons personal to him, and not directed against him as an employee, or because of his employment.’ ” 220 Ala. at 27, 123 So. at 226. Similarly, § 25-5-1(9), provides, in pertinent part:
“Injury does not include an injury caused by the act of a third person or fellow employee intended to injure the employee because of reasons personal to him or her and not directed against him or her as an employee or because of his or her employment.”
In Dean, a night watchman was robbed and murdered while he was on duty. The trial court denied compensation to the watchman’s widow, holding that the sole motive of the murder was to rob the night watchman of his personal belongings. This Court reversed the judgment of the trial court and held that determining the motive for the injury did not end the inquiry. This Court held that the night watchman’s injury was compensable, although the attacker had no motive to injure the employer, because the peculiar hazards of being a night watchman not only furnished the occasion and opportunity for the robbery and the murder, but also suggested the opportunity for robbery; thus, the Court reasoned, his employment contributed to the injury. This Court specifically found a causal connection between the type of employment and the robbery/murder.
In the present case, substantial evidence supports the trial court’s factual finding that the assault was not directed against N.J.J. because of her employment but was instead instigated by racial motives. Among other things, the trial court’s finding is supported by the fact that racial slurs were directed at N.J.J. during the attack and by the lack of any statements made during the attack that would indicate that the attack was related to N.J.J.’s employment. The facts that a restaurant manager is periodically required to unlock a restaurant in the early *458 morning hours and that the manager might be forced to confront a customer at the restaurant as part of his or her duties are not peculiar hazards that would suggest an unusually high opportunity for the manager to be the victim of a sexual assault in contrast to the robbery and murder of the night watchman in Dean. Where the criminal act is accomplished for reasons personal to the victim, though the employment may give the assailant a convenient opportunity for committing the crime, the injury does not arise out the employment within the meaning of the Workers’ Compensation Act. Here, the fact that N.J.J. had to open the store in the early morning hours gave the assailants the opportunity to surprise N.J.J. when she was alone and to commit this grotesque assault, but the trial court’s finding that the assailants acted for personal reasons is supported by the evidence, including the racial slurs.
WRIT QUASHED.
SEE, LYONS, STUART, BOLIN,[2] and PARKER, JJ., concur.
SMITH, J., concurs in the rationale in part and concurs in the result.
WOODALL and MURDOCK, JJ., concur in the result.
COBB, C.J., dissents.

. The polygraph results were admitted as part of the evidence in this worker's compensation case.